**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Essa Waggeh,<br><br>                              Petitioner,<br><br>        -against-<br><br>Utility Workers Union of America Local 1-2,<br>et al.,<br><br>                              Respondents. | 1:25-cv-10258 (SDA)<br><br><u>OPINION AND ORDER</u> |

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

In this action, Petitioner Essa Waggeh ("Petitioner" or "Waggeh") seeks to vacate an arbitrator's Opinion and Award in a labor arbitration proceeding between Respondent Consolidated Edison Company of New York ("ConEd") and Respondent Utility Workers Union of America Local 1-2 (the "Union"), in which the arbitrator found that ConEd had reasonable cause to terminate Waggeh, who had been a ConEd employee. (*See* Verified Pet., Not. Removal Ex. A ("State Pet."), ECF No. 1-1, ¶ 5: 8/8/25 Arb. Op. & Award, ECF No. 1-1 at PDF pp. 13-25.) Pending before the Court are a motion by ConEd, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Waggeh's Petition (ConEd's 3/30/26 Not. of Mot., ECF No. 31)[1] and a motion by the Union, pursuant to Rule 12(b)(6), to dismiss the Petition. (Union's 3/30/26 Not. of Mot., ECF No. 34.) For the following reasons, ConEd's and the Union's motions are GRANTED.

---

[1] Although ConEd's notice of motion states that ConEd also is moving to dismiss under Rule 12(b)(1) (*see* ConEd's 3/30/26 Not. of Mot.), its memorandum of law makes no arguments in support of dismissal under that rule. (*See* ConEd's 3/30/26 Mem., ECF No. 32.)

**FACTUAL ALLEGATIONS**[2]

Prior to February 7, 2024, Waggeh was employed by ConEd as a gas trouble shooter ("Troubleshooter") for about nine years, under the 2024-2028 Collective Bargaining Agreement (the "CBA") between ConEd and the Union.[3] (*See* State Pet. ¶ 6.) The facts regarding the job of ConEd Troubleshooters are set forth in the arbitrator's Opinion and Award (which facts the Petitioner does not contest), as follows:

> In general, Troubleshooters are expected to respond to calls of gas leaks from the public or from responders from other departments. When not responding to leak calls, they also work with plumbing contractors in inspecting construction and repair of gas lines. Troubleshooters are typically assigned to pre-determined zones within the borough. In performing leak remediation and detection, the Troubleshooter usually works alone or for safety purposes with another Troubleshooter. If they are called to a leak, it is expected that they will evaluate the situation and then make it safe by either completing simple repairs or forwarding for further work. This is usually performed by shutting something off or performing a "screwdriver repair" to the fitting or hose. If a major repair is required, then the Troubleshooter makes the situation safe for a permanent repair by a plumber contractor.

> Regardless of the nature of the call, the Troubleshooter is expected to accurately document the activity. The information is placed in the Company's database where it is retained for use to record how and when work is performed, and for compliance with City rules and regulations. As such the Company asserts that it depends on the Troubleshooter to provide the information in an honest and consistent manner.

---

[2] For purposes of considering Respondents' Rule 12(b)(6) motions, the Court accepts as true the factual allegations in the Petition. *See City of Providence v. Bats Glob. Mkts., Inc.*, 878 F.3d 36, 48 (2d Cir. 2017). The Court also considers the CBA, which is incorporated by reference in the Petition, and the arbitration award, which is annexed as an exhibit to the Petition. *See In re Synchrony Fin. Secs. Litig.*, 988 F.3d 157, 171 (2d Cir. 2021) ("[A]t the motion to dismiss stage, courts may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents . . ., and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." (internal quotation marks & citation omitted)).

[3] The 2020-2024 CBA is included as part of ECF No. 1-1 (as an exhibit to the notice of removal), starting at PDF p. 54. Another version of the CBA separately has been filed at ECF No. 22-1 as an exhibit to the Repole Declaration, which identifies it as the 2024-2028 CBA. (*See* Repole Decl., ECF No. 22, ¶ 3).

The documentation of worker activity is entered through a computer tablet interface called a FM2. After logging in, the Troubleshooter records their activity by answering a series of work questions. Depending on the answer, the application may ask a series of additional questions about the project. At the end of the Troubleshooter's shift, the data entered is then reviewed by a supervisor. Template answers are spot checked for accuracy and consistency.

(Arb. Op. & Award, ECF No. 1-1 at PDF pp. 15.)

On February 7, 2024, Waggeh was terminated for alleged falsification of leak investigation templates in the FM2 system, stemming from 167 instances between November 14, 2022, and December 29, 2023, where he answered "no" to "is there a gas leak present?" while noting repairs or shut-offs in comments. (State Pet. ¶ 7.) Waggeh contended that his FM2 entries resulted from FM2 system flaws, inadequate training and management instructions. (*Id*. ¶ 9.)

Following Waggeh's termination, the Union filed a grievance under the CBA. (State Pet. ¶ 12.) On March 22, 2024, the Union sent a letter to ConEd stating that, in accordance with Article XII of the CBA, it sought to arbitrate Waggeh's grievance and stating that he was unjustly terminated in violation of Article XI of the CBA.[4] (*See* 3/22/24 Union Ltr., ECF No. 1-1 at PDF p. 103.) According to Waggeh, the Union's representation of him "was perfunctory and arbitrary." (*See* State Pet. ¶ 12.) Following three days of hearings, in December 2024 and March 2025, the arbitrator's Opinion and Award, dated August 8, 2025, upheld termination and denied Waggeh's grievance. (*See* Arb. Op. & Award, ECF No. 1-1 at PDF p. 13; *see also* State Pet. ¶ 14.) Specifically, the arbitrator found that ConEd had reasonable cause to terminate Waggeh. (*See* Arb. Op. & Award, ECF No. 1-1 at PDF pp. 13, 25.)

---

[4] Article XI, Section 43, of the CBA states that "[t]he right and power to select and hire all employees, to suspend, discipline, demote or discharge them for reasonable cause . . . are recognized as vested exclusively in the [Employer]." (CBA, ECF No. 22-1, at 50-51.)

## PROCEDURAL HISTORY

On October 21, 2025, Waggeh filed a Verified Petition in New York Supreme Court against ConEd and the Union, as Respondents, pursuant to N.Y. CPLR § 7511(b), to vacate the arbitration award. (*See* State Pet. ¶ 5.) Waggeh sought, among other things, reinstatement, back pay and attorneys' fees and costs under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"). (*See id.*)

On November 25, 2025, the Verified Petition was served on ConEd. (Not. of Removal, ECF No. 1, ¶ 2.) On December 11, 2025, ConEd filed a notice of removal in this Court. (*See* Not. Removal, ECF No. 1.) On December 16, 2025, Waggeh filed a motion for remand. (*See* Pet.'s 12/16/25 Not. of Mot., ECF No. 13.) On January 14, 2026, Waggeh's motion was referred to the undersigned for a report and recommendation. (1/14/26 Am. Order of Ref., ECF No. 20.)

On January 26, 2026, the undersigned recommended that Petitioner's motion to remand be denied. *See Waggeh v. Util. Workers Union of Am. Loc. 1-2*, No. 25-CV-10258 (VSB) (SDA), 2026 WL 579380, at *1 (S.D.N.Y. Jan. 26, 2026). On March 2, 2026, District Judge Broderick adopted the undersigned's recommendation. *See Waggeh v. Util. Workers Union of Am. Loc. 1-2*, No. 25-CV-10258 (VSB) (SDA), 2026 WL 579378, at *1 (S.D.N.Y. Mar. 2, 2026).

On March 30, 2026, Respondents filed the motions to dismiss that presently are before the Court. (*See* ConEd's 3/30/26 Not. of Mot.; Union's 3/30/26 Not. of Mot.) On April 2, 2026, Petitioner filed his memoranda in opposition. (Pet.'s 4/2/26 Opp. to ConEd MTD, ECF No. 36; Pet.'s 4/2/26 Opp. to Union MTD, ECF No. 37.) On April 9, 2026, Respondent's filed their reply memoranda. (ConEd 4/9/26 Reply, ECF No. 38; Union 4/9/26 Reply, ECF No. 39.)

On April 30, 2026, upon the parties' consent, this case was assigned to the undersigned to conduct all proceedings including trial, the entry of final judgment and all post-trial proceedings. (Consent, ECF No. 44.)

**LEGAL STANDARDS**

### I.      Motion To Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Although the Court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor, *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014), that tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### II.      Standards Regarding Vacatur Of Labor Arbitration Awards

"[I]n the context of labor arbitrations, 'an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties.'" *1199SEIU United Healthcare Workers E. v. PSC Cmty. Servs.*, 597 F. Supp. 3d 557, 567 (S.D.N.Y. 2022) (quoting *Katir v. Columbia Univ.*, 15 F.3d 23, 24-25 (2d Cir. 1994)). "In order to provide individual employees with recourse when a union breaches its duty of fair representation in a grievance or arbitration proceeding, the Supreme Court has held

that an employee may bring suit against both the union and the employer." *Carrion v. Enter. Ass'n, Metal Trades Branch Loc. Union 638*, 227 F.3d 29, 33 (2d Cir. 2000) (citing *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164 (1983)). "Such suit, which alleges that the employer breached the CBA and that the union breached its duty of fair representation, is known as a hybrid § 301/fair representation claim."[5] *Id*. (citing *DelCostello*, 482 U.S. at 164-65). "The employee may sue the employer, the union, or both in a hybrid § 301/fair representation claim; to prevail the employee 'must not only show that [his] discharge was contrary to the contract, but must also carry the burden of demonstrating breach of duty by the Union.'" *Id*. (citing *DelCostello*, 482 U.S. at 165). Put another way, "[t]o prevail on a hybrid § 301/duty of fair representation claim, [a plaintiff] must demonstrate **both** (1) that [his employer] breached its collective bargaining agreement and (2) that [the union] breached its duty of fair representation." *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005) (emphasis supplied).

"A claim for breach of the duty of fair representation consists of two elements." *White v. White Rose Food*, 237 F.3d 174, 179 (2d Cir. 2001). The first element is substantive and requires

---

[5] Section 301 of the LMRA provides, in part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). "Section 301 of the LMRA 'governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement.'" *Cruz v. Loc. 32BJ*, No. 22-CV-03068 (JAV) (SDA), 2026 WL 878597, at *7 (S.D.N.Y. Mar. 31, 2026) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)).

that a plaintiff demonstrate that the union's "conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Id*. (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)); *see also Sanozky*, 415 F.3d at 282. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Sanozky*, 415 F.3d at 282-83 (quoting *Airline Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *White*, 237 F.3d at 179 (quoting *Marquez*, 525 U.S. at 45-46). Thus, "[t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989).

The second element of a claim for breach of the duty of fair representation pertains to causation and requires that a plaintiff demonstrate "a causal connection between the union's wrongful conduct and [the plaintiff's] injuries." *White*, 237 F.3d at 179 (quoting *Spellacy v. Airline Pilots Ass'n–Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)).

## ANALYSIS

The arbitration award that Petitioner seeks to vacate arose out of an arbitration proceeding commenced by the Union against ConEd, and the Union and ConEd were the only parties to such proceeding. (*See* Arb. Op. & Award, ECF No. 1-1 at PDF p. 13.) As such, and as noted earlier, Petitioner does not have standing to challenge the proceeding.[6] *See 1199SEIU*, 597

---

[6] Even assuming, *arguendo*, that Petitioner had standing to challenge the arbitration award (which he does not), there is no basis to vacate it. Petitioner argues that the arbitration award should be vacated on the ground that it is irrational because it was decided on an incomplete record. (*See* Pet.'s 4/2/26 Opp. to

F. Supp. 3d at 567. The only recourse that Petitioner has is to bring a hybrid § 301/fair representation claim, as he has sought to do in this case. (*See* Pet.'s 4/2/26 ConEd Opp. at 14-18; Pet.'s 4/2/26 Union Opp. at PDF pp. 5-8.) Thus, the Court must determine whether Petitioner has stated such a claim.

The Court first considers whether Petitioner plausibly has alleged that the Union breached its duty of fair representation because if he has not, then he cannot state a hybrid § 301/fair representation claim. *See Sanozky*, 415 F.3d at 282.

---

ConEd MTD at 18; Pet.'s 4/2/26 Opp. to Union MTD at PDF p. 9.) The arbitrator's Opinion and Award on its face is well-reasoned and not irrational. Regardless, as the Second Circuit has held:

> [A] federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016) ("NFL"). A court is "not authorized to review the arbitrator's decision on the merits"; its role is simply to determine "whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id*. at 536. Thus, as long as "the arbitrator was even arguably construing or applying the contract and acting within the scope of his authority and did not ignore the plain language of the contract," the award should ordinarily be confirmed. *Id*. (internal quotation marks omitted).

*N.Y. City & Vicinity Dist. Council of United Bhd. of Carpenters & Joiners of Am. v. Ass'n of Wall-Ceiling & Carpentry Indus. of N.Y., Inc.*, 826 F.3d 611, 618 (2d Cir. 2016). Therefore, a court should vacate an award only where it "contradicts an express and unambiguous term of the contract or . . . so far departs from the terms of the agreement that it is not even arguably derived from the contract." *United Bhd. of Carpenters v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 275 (2d Cir. 2015) (internal quotation omitted). Courts may not "reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). Here, the arbitrator acted within the scope of his authority and there are no grounds to vacate the arbitration award.

In the Petition, Petitioner alleges the following regarding the Union's purported breach of its duty of fair representation:

> The Union filed a grievance under the CBA, but its representation was perfunctory and arbitrary. Despite [Petitioner's] repeated requests . . ., the Union failed to investigate or present evidence of FM2 flaws, including company emails admitting outages and training deficiencies . . ..
>
> The Union's information request . . . was limited and did not lead to submission of key exculpatory evidence like the audit of 25 mechanics . . . and prejudiced [Petitioner's] case.

(State Pet. ¶¶ 12-13 (citations omitted).)

In his memoranda in opposition to the Union's motion to dismiss, Petitioner asserts that certain evidence was not presented by the Union at the arbitration hearing, even though such evidence was provided to the Union, including "sworn co-worker affidavits"; a January 16, 2024 email from Kulpa admitting "room for error"; a "25-mechanic Bronx audit showing identical discrepancies"; a January 8, 2024 email from Trepiccione "admitting non-intentional errors by others"; "the training records proving no dedicated FM2 template training"; a decision by an Administrative Law Judge from the unemployment bureau finding no misconduct by Petitioner; and the CBA's technological-change protection clause, and that the Union failed to investigate such evidence. (*See* Pet.'s 4/2/26 Opp. to Union MTD at PDF p. 7; *see also* Pet.'s 4/2/26 Opp. to ConEd MTD at 7.) Petitioner argues that, "[h]ad the Union wanted to win the grievance," it should have presented such evidence, and thus that the Union breached its duty of fair representation by not presenting the evidence. (Pet.'s 4/2/26 Opp. to Union MTD at PDF p. 7.)

Petitioner's allegations do not suffice to state a claim for breach of the duty of fair representation. The foregoing allegations do not suggest that the Union's conduct was "arbitrary, discriminatory, or in bad faith." *See Sanozky*, 415 F.3d at 282. Nor do they suggest that "the

9

[U]nion's behavior [was] so far outside a wide range of reasonableness as to be irrational." *Id*. at 282-83.

In *Roy v. Buffalo Philharmonic Orchestra Soc'y, Inc.*, 682 F. App'x 42 (2d Cir. 2017), the Second Circuit affirmed the District Court's grant of a motion to dismiss a breach of duty of fair representation claim where the union member alleged, among other things, that the union failed to introduce evidence and failed to advance crucial arguments. *Id*. at 47. The Court stated: "None of the actions [the union member] identified in his complaint come close to demonstrating improper intent, purpose, or motive, or egregious behavior." *Id*. The Court continued, "[a]fter all, '[t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach.'" *Id*. (quoting *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989)); *see also Tucker v. Am. Bldg. Maint*., 451 F. Supp. 2d 591, 596 (S.D.N.Y. 2006) ("[F]ailure of a union representative to offer particular evidence or advance arguments that the grievant asserts would support his claim [do] not suffice to violate the duty of fair representation." (citations omitted)).

Even if the Court were to consider the evidence that Petitioner puts forth in his Petition, and argues in opposition to the pending motions, there are serious flaws with respect to such evidence and/or arguments. With respect to the four co-worker affidavits (which are identically worded), two of them have no dates, two of them have dates that fall months after the last hearing date and none of them is notarized. (*See* Affs., ECF No. 1-1 at PDF pp. 32-35.) These affidavits assert that there was a lack of training on the FM2 system and that there were system flaws that led to inaccuracies. (*See id*.) However, the arbitrator expressly considered Petitioner's arguments regarding the alleged lack of training and system inaccuracies. (*See* 8/8/25 Arb. Op. &

Award, ECF No. 1-1 at PDF p. 24.) The arbitrator found that, when the FM2 system was introduced, Petitioner made proper entries into the tablet and that, after he was initially questioned about his inaccurate entries, he resumed making proper entries. (*See id*.) In addition, the arbitrator found that random records of FM2 entries by other employees that were presented by ConEd "showed that those employees, over an extensive period, were able to make accurate entries." (*See id*. at PDF pp. 24-25.) These findings show that there were no issues regarding FM2 training or the system itself that caused Petitioner's inaccurate entries.[7]

Thus, even assuming the Union somehow breached a duty by not submitting co-worker affidavits, Petitioner has not plausibly alleged that the outcome of the arbitration would have been different if such affidavits had been submitted, as the arbitrator had considered the points raised in the affidavits. Accordingly, Petitioner could not satisfy the required causation element of a claim for breach of the duty of fair representation, *see White*, 237 F.3d at 179, requiring dismissal of such claim in any event.[8]

Petitioner argues that a "25-mechanic Bronx audit showing identical discrepancies" was not presented by the Union to the arbitrator. (*See* Pet.'s 4/2/26 Opp. to Union MTD at PDF p. 7; *see also* State Pet. ¶ 13 (alleging that "[t]he Union's information request . . . was limited and did

---

[7] Similarly, the Union's alleged failure to present to the arbitrator "the training records proving no dedicated FM2 template training" (*see* Pet.'s 4/2/26 Opp. to Union MTD at PDF p. 7) would not have affected the outcome of the arbitration, given the arbitrator's findings. Even assuming Petitioner was correct there was no "dedicated" FM2 training, the arbitrator found that "[t]he evidence showed that [ConEd] did train its employees on the function of the [F]M2." 8/8/25 Arb. Op. & Award, ECF No. 1-1 at PDF p. 23.)

[8] The two emails to which Petitioner refers (*i.e.*, a January 8, 2024 email from Trepiccione "admitting non-intentional errors by others" and a January 16, 2024 email from Kulpa admitting "room for error" (*see* Pet.'s 4/2/26 Opp. to Union MTD at PDF p. 7)) also would not have affected the outcome of the arbitration, given the arbitrator's findings.

not lead to submission of key exculpatory evidence like the audit of 25 mechanics . . .").) This

simply is not true.[9] ConEd's audit of comparator Bronx troubleshooters was presented to and

considered by the arbitrator; the arbitrator's Opinion and Award refers to the audit in connection

with ConEd's arguments and the arbitrator's finding of sufficient training. (*See* 8/8/25 Arb. Op. &

Award, ECF No. 1-1 at PDF pp. 19, 23-24.)

Petitioner also asserts that the Union failed to present to the arbitrator a decision by an

Administrative Law Judge ("ALJ") from the New York Unemployment Insurance Appeal Board.

(*See* Pet.'s 4/2/26 Opp. to Union MTD at PDF p. 7.) In a decision filed June 8, 2024, the ALJ

"conclude[d] that [Petitioner's] actions did not rise to the level of misconduct within the meaning

of the Unemployment Insurance Law and therefore, he [was] not disqualified from the receipt of

benefits." (Unemployment ALJ Decision, ECF No. 1-1 at PDF pp. 9-10.) The ALJ's decision,

however, has no bearing on the issues in this case. Section 623 of the New York Labor Law

expressly provides that "[n]o finding of fact or law contained in a decision rendered pursuant to

this article by a referee, the appeal board or a court shall preclude the litigation of any issue of

fact or law in any subsequent action or proceeding[.]" N.Y. Lab. Law § 623. Even putting aside the

controlling provisions of the Labor Law, the case law in this District holds that an unemployment

decision by an ALJ that there was no misconduct cannot be used to argue that an employer did

---

[9] Although the Court must accept as true the factual allegations in the Petition (*see* n.2, *supra*), it need not accept as true Petitioner's allegations regarding the subject audit since such allegations are contradicted by the arbitration award that is annexed as an exhibit to the Petition. *See Wimberly v. Experian Info. Sols.*, No. 18-CV-06058 (MKV), 2021 WL 326972, at *3 (S.D.N.Y. Feb. 1, 2021) ("[W]hen documents attached to the complaint as exhibits or incorporated by reference in the complaint contain statements that contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true." (internal quotation marks omitted)); *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (explaining that allegations are "assume[d] to be true unless contradicted by more specific allegations or documentary evidence").

not have cause for termination. *See Patricia v. Delford Indus., Inc.*, 660 F. Supp. 1429, 1435 (S.D.N.Y. 1987)  (stating that, in support of her hybrid claim under LMRA § 301, petitioner could not "parlay [a] determination" by the New York State Department of Labor Unemployment Insurance Board "into the further proposition" that she was fired without cause in violation of CBA because "it is possible to have" cause for termination "without actual misconduct").[10]

Finally, Petitioner's argument regarding the CBA's technological-change protection clause (*see* Pet.'s 4/2/26 Opp. to Union MTD at PDF p. 7) is meritless. Petitioner argues that "the CBA's technological-change protection clause . . . protects employees from adverse action due to new systems like FM2." (*See* Pet.'s 4/2/26 Opp. to ConEd MTD at 7.) Not so. The clause states:

> **Job Security**:  During the past several years a number of technological changes have been made in the Company's business and operations. The Company and the Union have generally been able to work out transfers of employees affected to other jobs with titles and rates of pay comparable to their previous jobs.
>
> An effort will be made to continue this practice. However, the Company hereby states that while certain changes in methods and procedures may be made during the contract term, the Company agrees that employees affected will, in cooperation with the Union, be transferred without reduction in pay. While this declaration of agreement must be at the risk of the business, the Company, nevertheless, believes that it will be able to carry this declaration through the contract term.

---

[10] In his memoranda in opposition to Respondents' motions to dismiss, Petitioner cited case law, including a case from this District, to argue that an arbitration award is "subject to vacatur because it directly contradicts the unemployment ALJ's no-misconduct determination on identical facts" – *e.g.*, *Matter of Wright v. New York City Tr. Auth.*, 61 Misc. 3d 797 (Sup. Ct. 2018) and *Golston-Green v. City of New York*, 184 A.D.3d 24 (2d Dep't 2020); *Sanders v. City of New York*, 200 F. Supp. 2d 404, 407 (S.D.N.Y. 2002). (*See* Pet.'s 4/2/26 Opp. to ConEd MTD at 20-21; Pet.'s 4/2/26 Opp. to Union MTD at PDF pp. 9-10.) As set forth at the end of this Opinion and Order, in response to an Order to Show Cause from the Court, Petitioner admits that these cases were incorrectly cited do not support his argument with respect to the ALJ's decision and has withdrawn such argument. (*See* Hardy 4/29/25 Decl., ECF No. 47, ¶¶ 5-8.)

(CBA, ECF No. 22-1 at 60.) This clause on its face protects union members from layoffs due to technological changes. However, Petitioner was not terminated due to technological changes. Rather, he was terminated due to allegations of falsified entries into a computer template. Thus, the clause has no application here and the Union could have breached no duty by failing to raise it with the arbitrator.

In sum, the Petition does not plausibly allege that the Union's conduct in this case was arbitrary, discriminatory or in bad faith. Rather, the actions taken by the Union in the course of representing Petitioner were tactical choices that cannot support a hybrid § 301/fair representation claim. Accordingly, the Court must dismiss the Petition with prejudice.[11]

**PETITIONER'S ERRONEOUS CITATIONS AND RESPONSE TO ORDER TO SHOW CAUSE**

Petitioner's memoranda in opposition to Respondent's motions cited cases that do not stand for the propositions for which they were cited. (*See* 4/22/26 Order, ECF No. 46, at 1 n.1.) As a result, in its Order, dated April 22, 2026, the Court directed Petitioner's counsel to show cause why sanctions should not be imposed upon him pursuant to Federal Rule of Civil Procedure 11. (*See id*. at 2.)

Rule 11(b)(2) provides:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

---

[11] "Because a union's breach of the duty of fair representation 'is a prerequisite to consideration of the merits of plaintiff's claim against' an employer for breach of a CBA, courts presented with hybrid claims need not reach the question of whether the employer violated the CBA unless the union has acted arbitrarily, in bad faith, or discriminatorily." *Acosta v. Potter*, 410 F. Supp. 2d 298, 309 (S.D.N.Y. 2006) (quoting *Young v. U.S. Postal Serv.*, 907 F.2d 305, 307 (2d Cir. 1990)). Because Plaintiff is unable to show that the Union breached its duty of fair representation, the Court declines to analyze the question of whether ConEd breached the CBA.

. . .

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Fed. R. Civ. P. 11(b)(2).

In response to the April 22 Order, Petitioner's counsel admitted that four cases were incorrectly cited and that one of his arguments was not supported by the cases he cited. (*See* Hardy 4/29/25 Decl., ECF No. 47, ¶¶ 5-7.) Thus, Petitioner's counsel violated Rule 11. Although the Court is somewhat dubious about the explanation provided for how this occurred (*see id*. ¶ 6), the Court takes note that Petitioner's counsel took responsibility for his actions. (*See id*. ¶ 8.) In these circumstances, the Court finds that a non-monetary sanction is appropriate, pursuant to Rule 11(b)(4), to deter repetition of the conduct or comparable conduct by others similarly situated. Accordingly, the Court hereby ADMONISHES Petitioner's counsel on the public record for his conduct. The Court expects that Petitioner's counsel will be more careful in his case citations in future cases.

## CONCLUSION

For the reasons set forth above, Respondents' motions to dismiss the Petition (ECF Nos. 31 & 34) are GRANTED, and this case is dismissed with prejudice. In addition, the Court ADMONISHES Petitioner's counsel for the erroneous citations in his opposition memoranda. The Clerk of Court is respectfully requested to close the case.

**SO ORDERED.**

Dated:       New York, New York
             May 16, 2026

_____
**STEWART D. AARON**
**United States Magistrate Judge**

16